1

2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3  Daniel NDIZEYE, | Case No.: 24-cv-0882-AGS-BLM |
| 4 | |
| 5              Plaintiff, | **ORDER (1) DENYING MOTION TO PROCEED IN FORMA PAUPERIS (ECF 6), (2) DISMISSING ACTION, (3) DENYING PETITION FOR WRIT OF MANDAMUS (ECF 9), AND (4) DENYING MOTION FOR EXPEDITED CONSIDERATION (ECF 7)** |
| 6  v. | |
| 7  Judge Carolyn CAIETTI, | |
| 8              Defendant. | |
| 9 | |

10        Plaintiff Daniel Ndizeye, proceeding without an attorney, is suing a state-court judge

11   for denying a motion for her disqualification. He also requests to proceed in forma

12   pauperis, that is, without paying the court's filing fees. As explained below, his IFP

13   application is denied because it does not provide sufficient detail. But even if his financial

14   situation qualified him, his claim would not survive mandatory screening.

**DISCUSSION**

15

16   **A.     IFP Application**

17        Parties instituting civil actions in United States district courts must pay $405 in filing

18   fees. *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc.

19   Fee Schedule, § 14 (eff. Dec. 1, 2023). But plaintiffs granted the right to proceed IFP need

20   not pay those fees. *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). To establish

21   IFP status, applicants must allege poverty "with some particularity, definiteness and

22   certainty." *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960).

23        Ndizeye's application states that his income is zero dollars. (ECF 6, at 4–5.) But this

24   contradicts his statement that he has "income derived from financial aid." (*Id.* at 1.) His

25   application also surprisingly indicates that he has no expenditures, including a purported

26   zero dollars spent on food, clothing, and housing. (*Id.* at 4–5.)

27        While an income of zero dollars, even against no monthly expenses, would generally

28   qualify a party for IFP status, Ndizeye's filing does not allege poverty with the required

1

1  "particularity, definiteness and certainty." *See Jefferson*, 277 F.2d at 725. A particularly
2  pleaded application might, for example, list college financial aid support as an income
3  source alongside any corresponding expenditures.

4      Without a properly completed application, this Court "is left with questions that
5  could go to the accuracy and completeness of the affidavit." *See Peter J. v. Kijakazi*, No.
6  23-cv-02240-JLB, 2023 WL 9111249, at *2 (S.D. Cal. Dec. 8, 2023) (denying IFP motion
7  "devoid of any information about the resources indicating how [plaintiff] supports
8  himself"). The Court therefore denies Ndizeye's IFP motion. Despite the inadequacy of
9  Ndizeye's IFP application, the Court addresses his complaint as well.

10  **B.     Screening and Dismissal**

11      Courts must screen IFP claims and dismiss them when appropriate.
12  28 U.S.C. § 1915(e)(2); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("section
13  1915(e) not only permits but requires a district court to dismiss an in forma pauperis
14  complaint that fails to state a claim").

15      **1.  *Requested Relief***

16      Ndizeye alleges that Judge Caietti violated state statutes when she "unjustly presided
17  over her own disqualification proceedings." (ECF 1, at 1.) He is now suing Judge Caietti
18  in her "official capacity as a judge of the Superior Court of California" with four relief
19  requests. (ECF 1, at 1, 4, 9–10.) Under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, he seeks
20  (1) "review and reversal of any procedural and substantive decisions made under the
21  influence of [Judge Caietti's purported] bias," (2) "an order enjoining [Judge Caietti] from
22  any further proceedings in Plaintiff's [state court] case and any related actions,"
23  (3) declaratory relief that her actions were "unlawful and invalid," and (4) unspecified
24  "damages." (*Id.* at 4, 9–10.) Ndizeye also named the San Diego County Superior Court of
25  California as a "nominal defendant" "for the effective granting of the declaratory and
26  injunctive relief sought." (*Id.* at 2.)

27      **2.  *Judicial Disqualification and Cal. Civ. Proc. Code § 170.3(d)***

28      The crux of Ndizeye's complaint is Judge Caietti's alleged determination of the

24-cv-0882-AGS-BLM

1    merits of her own disqualification. (*Id.* at 1.) But the only avenue to raise a judicial

2    disqualification challenge is by a writ of mandate from the *state* court of appeal within

3    10 days of the state court's disqualification decision. Cal. Civ. Proc. Code § 170.3(d); *see*

4    *also North Am. Title Co. v. Superior Ct.*, 308 Cal. Rptr. 3d 769, 785 (Ct. App. 2023), *rev'd*

5    *on other grounds*, 557 P.3d 1180 (2024) ("writ review is the exclusive method for seeking

6    review of claims of statutory disqualification," such as "disqualification of a judge").

7    Ndizeye has leveled his complaint in the wrong place at the wrong time, as this is not a

8    state appeals court, and more than 10 days have passed since the disqualification

9    determination at issue. (*See* ECF 1-3, at 2.) Moreover, Judge Caietti's judicial immunity

10   and the *Rooker-Feldman* doctrine bar this Court's review of his claims.

11        **3.  *Judicial Immunity***

12        "A judge is absolutely immune from liability for [her] judicial acts even if [her]

13   exercise of authority is flawed by the commission of grave procedural errors." *Stump v.*

14   *Sparkman*, 435 U.S. 349, 359 (1978). Judicial immunity shields judges in all but two

15   circumstances: (1) when a judge's actions are "nonjudicial," meaning the actions are "not

16   taken in the judge's judicial capacity," and (2) when a judge's actions, "though judicial in

17   nature, [are] taken in the complete absence of all jurisdiction." *Acres Bonusing, Inc v.*

18   *Marston*, 17 F.4th 901, 915 (9th Cir. 2021). Courts "broadly construe the scope of

19   immunity," and "exceptions to immunity should be narrow." *Ashelman v. Pope*, 793 F.2d

20   1072, 1078 (9th Cir. 1986) (citing *Adams v. McIlhany*, 764 F.2d 294, 297 n.1 (5th Cir.

21   1985)).

22        First, when assessing whether a judge's behavior was "nonjudicial," courts look to

23   whether the act "is a function normally performed by a judge," and whether the parties

24   "dealt with the judge in [her] judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

25   Here, the alleged behavior involved Judge Caietti deciding a disqualification motion's

26   merits. (ECF 1, at 1.) This is squarely within the bounds of "a function normally performed

27   by a judge." *See Mireles*, 502 U.S. at 12. And Ndizeye "dealt" with Judge Caietti by filing

28   court motions, so he "dealt with the judge in [her] judicial capacity." (ECF 1, at 6–7); *see*

1    *Mireles*, 502 U.S. at 12. Judge Caietti's behavior was, therefore, "judicial" in this case.

2    Second, when determining whether "the judge acted with jurisdiction, courts focus

3    on whether the judge was acting clearly beyond the scope of subject matter jurisdiction."

4    *Ashelman*, 793 F.2d at 1076. And "[w]here not clearly lacking subject matter jurisdiction,

5    a judge is entitled to immunity." *Id.* So, for example, "if a probate judge, with jurisdiction

6    over only wills and estates, should try a criminal case, he would be acting in the clear

7    absence of jurisdiction and would not be immune from liability for his action." *Stump*,

8    435 U.S. at 357 n.7. But if "a judge of a criminal court should convict a defendant of a

9    nonexistent crime, he would merely be acting in excess of his jurisdiction and would be

10   immune." *Id.*

11   Here, Ndizeye has presented no evidence suggesting that Judge Caietti is anything

12   but a civil judge who issued a civil ruling in his civil case, so she also "acted with

13   jurisdiction." *See Ashelman*, 793 F.2d at 1076. Thus, Judge Caietti is "absolutely immune

14   from liability for" the claims that Ndizeye alleges. *See Stump*, 435 U.S. at 359.

15   But even if Judge Caietti were not immune from the claims Ndizeye presents, the

16   *Rooker-Feldman* doctrine bars this Court's review of those claims.

17   **4.  *The* Rooker-Feldman *Doctrine***

18   "The *Rooker-Feldman* doctrine instructs that federal district courts are without

19   jurisdiction to hear direct appeals from the judgments of state courts."[1] *Cooper v. Ramos*,

20   704 F.3d 772, 777 (9th Cir. 2012). District courts are also barred from reviewing "de facto

21

22   ───────────────

23   [1] As far as the Court can tell, the state court issued a final judgment in Ndizeye's
     case when "Judge Caietti dismissed the underlying case" "on purported grounds of the
24   statute of limitations"—so *Rooker-Feldman* provides the appropriate analytical
     framework. (ECF 1, at 7.) To the extent the case was still ongoing, *Younger* abstention
25   would likely require dismissal because "the ability of the courts" of each state "to
     determine when recusal of a judge or justice is appropriate and to administer the recusal
26   decision process in accordance with state law operates uniquely in furtherance of the state
     courts' ability to perform their judicial functions." *Aaron v. O'Connor*, 914 F.3d 1010,
27   1017 (6th Cir. 2019) (cleaned up).

28

4

1  appeal[s]" that involve a plaintiff who "complains of a legal wrong allegedly committed

2  by the state court[] and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d

3  1148, 1163 (9th Cir. 2003).

4      First, Ndizeye's request that this Court "review and revers[e]" "any procedural and

5  substantive decisions made under the influence of [Judge Caitti's purported] bias" asks this

6  Court to do exactly what *Rooker-Feldman* prohibits. (ECF 1, at 4); *see Cooper*, 704 F.3d

7  at 777. Only the "United States Supreme Court, not the lower federal courts," have

8  "appellate jurisdiction over state court judgments." *Cooper*, 704 F.3d at 777. So this Court

9  cannot "review and revers[e]" the decision, and this claim fails. (*See* ECF 1, at 4.)

10     *Rooker-Feldman* also bars district courts from reviewing claims that are

11  "inextricably intertwined" with the prohibited direct or de facto appeal of a state court

12  judgment. *Cooper*, 704 F.3d at 778–79. Claims are "inextricably intertwined" when

13  "federal relief can only be predicated upon a conviction that the state court was wrong."

14  *Id.* at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J.,

15  concurring)). And the Ninth Circuit has found that claims are "inextricably intertwined"

16  when the requested federal action would "void" a state court ruling. *Id.* (quoting *Fontana*

17  *Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002)).

18     Here, Ndizeye's reversal request is "inextricably intertwined" with his various

19  requests for a de facto appeal—that this Court "enjoin[ Judge Caietti] from any further

20  proceedings in Plaintiff's [state-court] case," issue declaratory relief that her actions were

21  "unlawful and invalid," and order unspecified "damages." (*See* ECF 1, at 4, 9–10.) For

22  example, Ndizeye is asking the Court to enjoin Judge Caitti's participation in "any" of

23  Ndizeye's "further proceedings." (*Id.* at 10.) This would effectively "void" Judge Caietti's

24  decision to continue presiding in the case. Similarly, declaring that Judge Caietti's alleged

25  failure to refer the disqualification issue to another judge was "unlawful" or "invalid"

26  would also require this Court to declare her decision—a state-court decision—"void." (*See*

27  *id.* at 9); *Cooper*, 704 F.3d at 779. The requests are therefore "inextricably intertwined"

28  with Ndizeye's request that this Court "review and revers[e]" that state court decision. *See*

1 *id.* They fail under the *Rooker-Feldman* doctrine, and the request for damages on account

2 of the failed claims is correspondingly denied.

3     Finally, because all Ndizeye's claims against Judge Caietti fail, his claims against

4 the San Diego County Superior Court as a "nominal defendant" "for the effective granting

5 of the declaratory and injunctive relief sought" fail as well. (*See* ECF 1, at 2.)

6 **C.    Leave to Amend**

7     "A district court should not dismiss a pro se complaint without leave to amend unless

8 it is absolutely clear that the deficiencies of the complaint could not be cured by

9 amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (cleaned up).

10 Although the Court considers it unlikely that Ndizeye can overcome his complaint's

11 deficiencies, that result is not "absolutely clear." He therefore may amend his complaint to

12 correct the deficiencies identified in this order.

13                                   **CONCLUSION**

14     Ndizeye's IFP motion is **DENIED**, and his complaint is **DISMISSED** with leave to

15 amend. His (1) petition for a writ of mandamus to promptly rule on his IFP motion and

16 (2) motion for expedited consideration are both **DENIED** as moot.

17     By January 21, 2025, Ndizeye must file any amended complaint, remedying the

18 identified deficiencies. If he fails to do so by that date, the Court may enter a final order

19 dismissing this case, based both on his failure to state a claim and his failure to prosecute

20 in compliance with a court order requiring amendment. "If a plaintiff does not take

21 advantage of the opportunity to fix his complaint, a district court may convert the dismissal

22 of the complaint into dismissal of the entire action." *Lira v. Herrera*, 427 F.3d 1164, 1169

23 (9th Cir. 2005).

24 Dated:  December 23, 2024

25

26                                   _____
                                     Andrew G. Schopler
                                     United States District Judge

27

28

24-cv-0882-AGS-BLM